### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

CUSTOM PAK BROKERAGE, LLC,

        Plaintiff,

     v.

DANDREA PRODUCE, INC.,
RONALD P. DANDREA, FRANK S.
DANDREA, STEVEN P. DANDREA,
and JEFFREY J. GERAGI,

        Defendants.

Civil No. 13-5592 (NLH/AMD)

**OPINION**

---

**APPEARANCES**:

THOMAS G. ALJIAN, JR.
ALJIAN & MONTGOMERY
16 MAPLE DR
COLTS NECK, NJ 07722
    On behalf of plaintiff

MICHAEL L. STONBERG
KENNY SHELTON LIPTAK NOWAK LLP
505 EIGTH AVENUE, SUITE 2302
NEW YORK, NY 10018
    On behalf of the Dandrea defendants

JEFFREY J. GERAGI
2249 BLOODS GROVE CIRCLE
DELRAY BEACH, FL 33445
    Appearing *pro se*

**HILLMAN**, District Judge

    Presently before the Court is the motion of defendant,

Jeffrey J. Geragi, to dismiss the claims against him for lack of

personal jurisdiction.  For the reasons expressed below,

Geragi's motion will be denied.

## BACKGROUND

Plaintiff, Custom Pak Brokerage, LLC, a company based in Florida, filed suit against defendants Dandrea Produce Inc., a New Jersey company, and the company's principals, all New Jersey citizens, to recover unpaid invoices for watermelons Custom Pak sold to Dandrea.  Custom Pak then filed an amended complaint to add claims against defendant Jeffrey Geragi, a citizen of Florida and a former employee of Custom Pak, for breach of fiduciary duty and tortious interference with contractual relations when, according to Custom Pak, the Dandrea defendants informed Custom Pak that Geragi, as Custom Pak's agent, agreed to much lower pricing than what was stated on Custom Pak's invoices.  Custom Pak alleges that Geragi retroactively tried to reduce the agreed upon price between Custom Pak and Dandrea in order to secure employment with Dandrea.

Geragi, appearing pro se, filed a motion to dismiss Custom Pak's claims against him pursuant to Federal Civil Procedure Rule 12(b)(2) for lack of personal jurisdiction.  Custom Pak has opposed Geragi's motion.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because plaintiff has asserted claims under section 5(c)(5) of the Perishable Agricultural

2

Commodities Act, 1930 ("PACA"), 7 U.S.C. § 499e(c)(5).  The
Court has supplemental jurisdiction over plaintiff's state
law claims pursuant to 28 U.S.C. § 1367(a).

### B. Standard for Motion to Dismiss pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for
dismissal of an action when the Court does not have
personal jurisdiction over a defendant.  "Once challenged,
the plaintiff bears the burden of establishing personal
jurisdiction."  O'Connor v. Sandy Lane Hotel Co., Ltd., 496
F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v.
Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  In deciding a
motion to dismiss for lack of personal jurisdiction, the
Court must "accept all of the plaintiff's allegations as
true and construe disputed facts in favor of the
plaintiff."  Carteret Sav. Bank v. Shushan, 954 F.2d 141,
142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992)
(citations omitted).[1]

---

[1] There is a "significant procedural distinction" between a
motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule
12(b)(6).  Time Share Vacation Club v. Atlantic Resorts, Ltd.,
735 F.2d 61, 66 n.9 (3d Cir. 1984).  "A Rule 12(b)(2) motion,
such as the motion made by the defendants here, is inherently a
matter which requires resolution of factual issues outside the
pleadings, i.e. whether in personam jurisdiction actually lies.
Once the defense has been raised, then the plaintiff must
sustain its burden of proof in establishing jurisdictional facts
through sworn affidavits or other competent evidence.  . . .
[A]t no point may a plaintiff rely on the bare pleadings alone

3

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted). The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant establishes minimum contacts by "'purposefully

---

in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id. (citation omitted).

avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'"  Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum state.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

     In deciding whether a defendant's contacts with a forum are sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or arise out of the cause of action at issue in the case.  The Court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  If the cause of action has no relationship to a defendant's contacts with a forum state, the Court may nonetheless exercise general personal jurisdiction if the defendant has conducted "continuous and systematic" business

5

activities in the forum state.  Id. at 416.

Once the Court determines that the defendant has minimum
contacts with the forum state, it must also consider whether the
assertion of personal jurisdiction over the defendant
"comport[s] with 'fair play and substantial justice'" to satisfy
the due process test.  Burger King Corp., 471 U.S. at 476
(quoting Int'l Shoe, 326 U.S. at 320).  In this regard, it must
be reasonable to require the defendant to litigate the suit in
the forum state, and a court may consider the following factors
to determine reasonableness: the burden on the defendant, the
forum state's interest in adjudicating the dispute, the
plaintiff's interest in obtaining convenient and effective
relief, the interstate judicial system's interest in obtaining
an efficient resolution of controversies, and the shared
interest of the several States in furthering fundamental
substantive social policies.  Id. at 477 (citing World Wide
Volkswagen, 444 U.S. at 292).

### C.   Analysis

In its amended complaint, Custom Pak claims that after
Geragi agreed with Steven Dandrea to sell produce to Dandrea at
the prices set forth on Custom Pak's invoices, Geragi attempted
to retroactively alter the agreed upon price to a reduced price.
(Amend. Compl. ¶¶ 42-43.)  Custom Pak claims that Geragi did
this in order to provide a financial benefit for Dandrea because

Dandrea was his new employer.  (Id. ¶ 44.)  Custom Pak claims
that Geragi's "secret benefit" to himself breached his fiduciary
duties to Custom Pak, as well as constituted tortious
interference with Custom Pak's contractual relations with
Dandrea.  (Id. ¶¶ 46-47, 53.)

Geragi argues that this Court cannot exercise personal
jurisdiction over him because: (1) from the time he worked for
Custom Pak through the present, he has lived in Florida and
never traveled to New Jersey, (2) when he left his employment
with Custom Pak, he did not become employed by Dandrea Produce
and he has not done any business with Dandrea Produce, and (3)
when he worked for Custom Pak, "the thought never crossed my
mind that I could be sued in New Jersey, particularly by my
former employer, who like me resides in Florida."  (Geragi
Declaration, Docket No. 66 at 5.)  Geragi adds, "I do not know
of any attorneys who are licensed to practice in New Jersey, and
I cannot afford to pay an attorney to represent me, or to travel
to New Jersey to attend court."  (Id.)

Accepting Custom Pak's allegations against Geragi as true,
which the Court must do in deciding a Rule 12(b)(2) motion, Toys
"R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)
("It is well established that in deciding a motion to dismiss
for lack of jurisdiction, a court is required to accept the
plaintiff's allegations as true, and is to construe disputed

facts in favor of the plaintiff."), the Court finds that Geragi has sufficient contacts with New Jersey to confer personal jurisdiction over him.

Custom Pak's complaint, when taken as true, demonstrates that Geragi purposefully availed himself of the privilege of conducting activities within New Jersey by secretly negotiating a deal with the Dandrea principals in New Jersey to sell watermelons to Dandrea in New Jersey for a reduced price so that Geragi could obtain employment with Dandrea, a New Jersey company. Even though the fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident, the nature of Geragi's contacts with New Jersey, including the character of the negotiations, the contemplated future consequences, and the course of dealings between the parties, establishes the "purposeful availment" requirement that Geragi's contacts with New Jersey were not a result of "random," "fortuitous," or "attenuated" contacts with New Jersey. Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

Further evidencing Geragi's "purposeful availment" to New Jersey is the affidavit he submitted in support of Dandrea's motion for summary judgment, which was filed during the pendency

of Geragi's motion to dismiss.[2]  (See Docket no. 89-3.)  In his
comprehensive affidavit, Geragi details his extensive
communications with Steven Dandrea through email and telephone
over the course of several months.  Because Geragi had
previously worked for Dandrea, he knew that Steven Dandrea did
not classify himself as a "watermelon man."  To secure a deal to
sell watermelons to Dandrea, Geragi called and emailed Steven
Dandrea numerous times to "attempt to persuade him to take an
interest in the watermelon business."  (Id. ¶¶ 3, 5.)  Once
Steven Dandrea agreed to buy the first load of watermelons,
Geragi then recounts in his affidavit the numerous calls and
emails he sent to Dandrea to facilitate that sale, and to secure
future sales.  These contacts between Geragi and Dandrea
detailed in Geragi's affidavit give rise to Custom Pak's cause
of action against both the Dandrea defendants and Geragi.

    The affidavits filed by Steven Dandrea, and Custom Pak's
Assistant Controller, Tammy Farewell, in connection with the
pending motions for summary judgment also relate Geragi's
contacts with New Jersey.  (See Docket Nos. 89-2.)  Steven
Dandrea's affidavit describes Geragi's telephone calls and
emails to him in New Jersey.  Farewell states in her affidavit

---

[2] The Court may consider Geragi's affidavit in deciding a Rule
12(b)(2) motion.  Time Share Vacation Club v. Atlantic Resorts,
Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

that (1) Geragi worked for the Dandrea company prior to working for Custom Pak, (2) Geragi had no authority to sell to the Company beyond its credit limit, (3) both Geragi and Dandrea were aware of this lack of authority, and (4) Geragi had no authority to broker Dandrea's purchases from any other seller than Custom Pak.

Based on Geragi's own statements, the statements of Steven Dandrea, and Custom Pak's allegations, it is clear that Geragi is at the heart of Custom Pak's case against the defendants. Custom Pak claims that Geragi, unilaterally and without authority from Custom Pak, negotiated the terms for the sale of watermelons to Dandrea that were below Custom Pak's invoice prices. Dandrea argues that it accepted the terms Geragi offered, as well as followed Geragi's direction regarding wire transfers of money to another produce company and the rejection and dumping of produce. Even though Geragi and the Dandrea defendants dispute that Geragi retroactively reduced the price of the watermelons in order to secure employment with Dandrea, that allegation in the amended complaint must be accepted as true. Moreover, Geragi admits that he worked for Dandrea produce prior to working for Custom Pak.

Regardless of Geragi's intentions behind his interaction with the Dandrea defendants, Geragi's numerous and purposeful contacts with New Jersey to broker the sale of produce, where

10

such conduct allegedly breached Geragi's fiduciary duties to Custom Pak, as well as amounted to tortious interference with the contractual relations between Custom Pak and Dandrea, demonstrate the requisite contacts with New Jersey to cause Geragi to reasonably anticipate being haled into court in New Jersey.  Further, the circumstances of this case cause this Court's exercise of personal jurisdiction over Geragi to comport with "fair play and substantial justice," as it was Geragi who convinced Steven Dandrea to become a "watermelon man."  From his prior employment with Dandrea, Geragi knew that Dandrea was unfamiliar with the watermelon market, and Geragi specifically targeted Dandrea and persuaded him to enter the watermelon business.  Even though Geragi claims in his motion that "the thought never crossed my mind that I could be sued in New Jersey,"[3] it was Geragi's extensive contacts with the Dandrea defendants in New Jersey that precipitated this entire case.

---

[3] A self-serving affidavit from a defendant challenging personal jurisdiction, without any other supporting proof, fails to constitute a proper challenge.  See Arrington v. Colortyme, Inc., 972 F. Supp. 2d 733, 742 (W.D. Pa. 2013) ("[T]he Court finds that this quantum of evidence--a short self-serving affidavit with no supporting documentation--cannot itself sustain a factual attack on the Court's subject-matter jurisdiction.") (citing Washington v. Hovensa LLC, 652 F.3d 340, 346-47 (3d Cir. 2011); De Cavalcante v. C.I.R., 620 F.2d 23, 26-27 (3d Cir. 1980) (when charged with making evidentiary determinations, court may find that self-serving affidavits absent evidentiary support are insufficiently probative)).

## CONCLUSION

For the reasons expressed above, Geragi's motion to dismiss Custom Pak's claims against him for lack of personal jurisdiction must be denied.  An appropriate Order will be entered.


Date:   December 4, 2014            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.