**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CUSTOM PAK BROKERAGE, LLC,

              Plaintiff,

      v.

DANDREA PRODUCE, INC.,
RONALD P. DANDREA, FRANK S.
DANDREA, STEVEN P. DANDREA,
and JEFFREY J. GERAGI,

              Defendants.

Civil No. 13-5592 (NLH/AMD)


OPINION

**APPEARANCES**:

THOMAS G. ALJIAN, JR.
ALJIAN & MONTGOMERY
16 MAPLE DR
COLTS NECK, NJ 07722

MICHAEL J. KEATON
SCOTT E. HILLISON
KEATON LAW FIRM, P.C.
707 LAKE COOK ROAD, SUITE 300
DEERFIELD, ILLINOIS 60015
    On behalf of plaintiff

MICHAEL L. STONBERG
KENNY SHELTON LIPTAK NOWAK LLP
505 EIGTH AVENUE, SUITE 2302
NEW YORK, NY 10018
    On behalf of the Dandrea defendants

JEFFREY J. GERAGI
2249 BLOODS GROVE CIRCLE
DELRAY BEACH, FL 33445
    Appearing *pro se*

**HILLMAN, District Judge**

    Presently before the Court are the motions of the

defendants for summary judgment.  For the reasons expressed

below, defendants' motions will be denied.

## BACKGROUND

Plaintiff, Custom Pak Brokerage, LLC, filed suit against defendants Dandrea Produce Inc. ("Dandrea") and the company's principals, Ronald P. Dandrea, Frank S. Dandrea, and Steven P. Dandrea, to recover unpaid invoices for watermelons Custom Pak sold to Dandrea.  Plaintiff claims that Dandrea owes it $619,083.61, plus interest, for the unpaid watermelon shipments, and that defendants, both the company and the principals, have violated their obligations under the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t ("PACA") to maintain a sufficiently funded trust account.  The Dandrea defendants have filed a counterclaim against plaintiff, claiming that plaintiff failed to deliver the quantity and quality of watermelons that they contracted for.

In addition to its claims against the Dandrea defendants, plaintiff advances claims against defendant Jeffrey Geragi, a former employee of plaintiff, for breach of fiduciary duty and tortious interference with contractual relations.  Plaintiff claims that the Dandrea defendants informed plaintiff that Geragi, as plaintiff's agent, agreed to much lower pricing than what was stated on plaintiff's invoices.  Plaintiff alleges that Geragi retroactively tried to reduce the agreed upon price between plaintiff and Dandrea in order to secure employment with

2

Dandrea.[1]

The Dandrea principals and the company have moved for summary judgment on plaintiff's claims against them.  The principals argue that because the company has sufficient assets to pay plaintiff's claim, if proven, they cannot be held individually liable for violations of PACA.  They also argue that because plaintiff entered into a contract for the sale of watermelons with the Dandrea company, and not the individual defendants, plaintiff cannot maintain its section 499b claim against them.

The Dandrea company has moved for summary judgment based on the argument that there is no disputed fact as to the terms of the watermelon contract between Dandrea and plaintiff. Defendants argue that because both Geragi, who was plaintiff's agent, and Steven Dandrea testified to the same terms of the contract, no dispute of facts exists as to the agreement. Because there are no disputed facts concerning the agreement, defendants argue that the Court should perform a sale-by-sale review of each of the 48 watermelon shipments to determine what is owed to whom.  Through that analysis, defendants argue that

---

[1] Previously, Geragi moved to dismiss plaintiff's claims against him for lack of personal jurisdiction.  The Court denied his motion.  Recently filed against Geragi are plaintiff's motions for sanctions, as well as a motion to dismiss his counterclaims. The Court will address those motions when briefing has been completed.

it is clear that plaintiff actually owes defendant almost
$10,000.

Plaintiff has opposed both motions.  With regard to the
individual defendants' motion, plaintiff argues that it is
irrelevant that the Dandrea company may have sufficient assets
to satisfy any judgment against it.  Plaintiff argues that its
claims are based on the company and the principals' failure to
fund the PACA trust as required by the Act.  Plaintiff further
argues that even if the Dandrea company's ability to pay were
relevant, defendants have failed to provide summary judgment-
worthy evidence of its solvency.  With regard to the Dandrea
company's motion for summary judgment on the terms of the
contract, plaintiff argues that significant disputed issues of
material fact on the terms of the agreements preclude the entry
of summary judgment.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over this matter pursuant
to 28 U.S.C. § 1331 because plaintiff has asserted claims
under section 5(c)(5) of the Perishable Agricultural
Commodities Act, 1930 ("PACA"), 7 U.S.C. § 499e(c)(5).  The
Court has supplemental jurisdiction over plaintiff's state
law claims pursuant to 28 U.S.C. § 1367(a).

**B. Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

C.    Analysis

    1.    The individual defendants' motion

The Third Circuit Court of Appeals explained the purpose

and provisions of the Perishable Agricultural Commodities Act:

> In 1930, PACA was enacted "to deter unfair business
> practices and promote financial responsibility in the
> perishable agricultural goods market." It provided that "no
> person shall at any time carry on the business of a
> commission merchant, dealer, or broker without a license
> valid and effective at such time." 7 U.S.C. § 499c(a).  In
> 1984, PACA was amended "to allow for a non-segregated
> floating trust for the protection of producers and
> growers." . . . "[T]he trust provision . . . provides
> unpaid suppliers with priority over secured lenders with
> regard to PACA trust assets held in trust by produce
> purchasers."  Federal district courts are "vested with
> jurisdiction specifically to entertain (i) actions by trust
> beneficiaries to enforce payment from the trust, and (ii)
> actions by the Secretary [of Agriculture] to prevent and
> restrain dissipation of the trust." 7 U.S.C. § 499e(c)(5).

Bear Mountain Orchards, Inc. v. Mich-Kim, Inc., 623 F.3d 163,

166 (3d Cir. 2010) (quoting Weis-Buy Servs., Inc. v. Paglia, 411

F.3d 415, 419 (3d Cir. 2005)).

Thus, the "theme of the PACA trust devolves to this: to

benefit producers of perishable agricultural items sold

nationally to consumers, PACA places duties on those entrusted

with such items for sale—the licensed sellers, or 'middlemen'

between producers and consumers—to prefer the producers over

others.  In the event of a breach of those duties, liability

attaches first to the licensed seller of perishable agricultural

commodities.  If the seller's assets are insufficient to satisfy

the liability, others may be found secondarily liable." Bear

Mountain, 623 F.3d at 167 (citations omitted).

     With regard to the individual liability of the principals

of the dealer, it is "not derived from the statutory language,

but from common law breach of trust principles." Id. (quoting

Weis-Buy, 411 F.3d at 421 (other citations omitted).  Following

basic trust principles, "'an individual who is in the position

to control the [PACA] trust assets and who does not preserve

them for the beneficiaries has breached a fiduciary duty, and is

personally liable for that tortious act.'"  Id. (quoting Weis-

Buy, 411 F.3d at 421) (other citations omitted).

     The Third Circuit has followed other circuit courts in

holding that "individual officers and shareholders, in certain

circumstances, may be held individually liable for breaching

their fiduciary duties under PACA."  Id. (citing cases).  The

Third Circuit has also followed other circuits in holding that

"individual shareholders, officers, or directors of a

corporation who are in a position to control trust assets, and

who breach their fiduciary duty to preserve those assets, may be

held personally liable under PACA."  Id. (citing cases).  An

individual is not liable unless the "individual . . . does not

preserve [the trust assets] for the beneficiaries."  Food Team

Intern., Ltd. v. Unilink, LLC, 2014 WL 7172478, *2 (3d Cir. Dec.

17, 2014) (citing Weis-Buy, 411 F.3d at 421).

7

Here, plaintiff claims in its amended complaint that the Dandrea company principals were statutory trustees with a duty to safeguard the PACA trust assets, and they were required to, but failed to, maintain the trust assets in such a manner as to ensure that at all times sufficient trust assets to satisfy all outstanding PACA trust obligations owed to plaintiff.  The principals argue, however, that plaintiff cannot maintain its PACA claims against them because the company has "sufficient assets" to pay plaintiff's claim.

The Court agrees with plaintiff that the issue of whether the defendants properly funded their PACA trust is separate from the issue of the company's current financial status, and it is the former issue that is relevant in this case.  PACA provides for a non-segregated trust for the protection of producers and growers, and the Dandrea defendants, as brokers of produce, are required to hold the proceeds from the sale of such produce in trust until everyone involved in the transaction is paid.  See 7 U.S.C. § 499e(c)(2).  Plaintiff claims that the Dandrea defendants failed to properly fund their PACA trust in the amount of $619,083.61 to reimburse plaintiff for the 48 shipments of watermelons.  Plaintiff further claims that individual principals of the Dandrea company were in the position to control trust assets, and they breached their fiduciary duty to preserve those assets.

Defendants' evidence regarding the financial health of the Dandrea company does not defeat plaintiff's PACA trust violation claims, for three reasons.  First, the company's current ability to pay a potential $618,000-plus judgment against it does not absolve its alleged violations of failing to maintain its PACA trust since April 2013.  Second, even if the Dandrea company's financial wherewithal were relevant, a showing that the company could pay a $618,000 judgment at the time of the filing of its motion does not confirm that it could pay the judgment today, or in the future.  Indeed, that concern is one of the purposes of the PACA trust provision.  Finally, aside from the "ability to pay" issue, the Dandrea principals' attempt to be relieved of plaintiff's PACA trust violation claims fails because they have not demonstrated that they were not in the position to control the trust assets.  Consequently, plaintiff's claims for PACA trust violations against all defendants may stand.

The individual defendants' motion also argues that plaintiff's claim against them for violations of § 499b(4) cannot be maintained because that provision does not involve trust fiduciary duties, but rather sounds in contract.  Because the Dandrea company, and not the company's principals, entered into a contract with plaintiff, the individual defendants argue that they cannot be held liable for a breach of the contract they were not a party to.

Even though parts of § 499b may appear to sound in contract – for example, §§ 499b(2) and (3) make it unlawful for a dealer to reject or dump produce without reasonable cause – plaintiff has advanced its § 499b claim pursuant to subsection (4), which provides, in relevant part, that it is unlawful for any dealer to "fail to maintain the trust as required under section 499e(c) of this title."  7 U.S.C. § 499b(4).  Thus, plaintiff's § 499b(4) claim can be maintained for the same reasons as its § 499e(c) claim.

### 2.   Dandrea company's motion

The Dandrea company has moved for summary judgment on the issue of the terms of the contract between Dandrea and plaintiff.  Defendant argues that because Geragi and Steven Dandrea both testified to the same terms of the contract, no disputed facts exist as to the agreement.  Based on that proposition, defendants argue that the Court could determine who is owed what, and enter judgment.

Defendant's motion is unavailing.  Even though Geragi and Steven Dandrea may have given corroborating testimony regarding their recollection of the contract terms, plaintiff has filed claims against Geragi for breach of his fiduciary duties to plaintiff, and tortious interference with plaintiff's contractual relations with Dandrea as a result of Geragi's negotiations with Dandrea.  More specifically, plaintiff claims

10

that after Geragi agreed with Steven Dandrea to sell produce to

Dandrea at the prices set forth on plaintiff's invoices, Geragi

attempted to retroactively alter the agreed upon price to a

reduced price, and that Geragi did this in order to provide a

financial benefit for Dandrea because Dandrea was his new

employer.  Plaintiff also claims that Geragi did not have

plaintiff's authority to make various alleged agreements with

defendants.

The Court cannot enter judgment in defendant's favor on the

terms of a contract that is so fundamentally disputed.

Moreover, the Court cannot enter judgment in defendant's favor

based solely on the affidavits and testimony of Geragi and

Dandrea with regard to any of their agreements, including the

rejection of twelve loads of watermelons, because the content

and propriety of their negotiations is at the heart of

plaintiff's disputed claims.[2]  Accordingly, the Dandrea company's

---

[2] The Court notes that plaintiff's claims against defendants, and
defendants' counterclaim against plaintiff, rely heavily on the
testimony of Geragi.  The evidence may show that (1) the
defendants simply relied upon Geragi's representations, unaware
that he was not authorized by plaintiff to make such
representations, (2) plaintiff authorized Geragi to make those
representations to defendants, but it is now disclaiming that it
made such authorizations, (3) defendants and Geragi conspired to
alter the plaintiff-approved pricing and other terms of their
deals, or (4) some other version of events.  On a motion for
summary judgment, the Court cannot assess the credibility of
Geragi or any other party in this case.  See Marino v.
Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).  Thus,
unless the parties present evidence that does not depend solely

motion for summary judgment on plaintiff's breach of contract

claim must be denied.


## CONCLUSION

For the reasons expressed above, the defendants' two

motions for summary judgment must be denied.  An appropriate

Order will be entered.



Date:  s/ Noel L. Hillman                s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

---

on a credibility determination, this case is not ripe for
summary disposition.